UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| The Coin-Tainer Company, LLC | Case No. 3:19-CV-00234 (NJR/RJD) |
| Plaintiff, | **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| Pap-R Products Company, and Pap-R-Tainer, LLC, | |
| Defendants. | |

*COMES NOW,* Plaintiff The Coin-Tainer Company, LLC, a Minnesota limited liability company (**"Coin-Tainer"**), for its amended complaint against Pap-R Products Company and Pap-R-Tainer, LLC (collectively **"Defendants"**), states and alleges as follows:

## NATURE OF THE CASE

1.     This is an action for trademark infringement, counterfeiting and dilution under the Lanham Act, 15 U.S.C. § 1051, et seq., including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and for trademark infringement, dilution and unfair competition occasioned by Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of Coin-Tainer's registered and unregistered trademarks and service marks, as well as breach of the parties' settlement agreement. Coin-Tainer brings this action to (i) protect its reputation for selling merchandise of the highest quality and grade; (ii) prevent deception of the consuming

public by Defendants; (iii) retain control over the substantial goodwill associated with its registered and unregistered trademarks and service marks being unlawfully exploited by Defendants; and (iv) avoid thousands of irretrievably lost sales.

2.     Specifically, Coin-Tainer seeks injunctive relief to prevent Defendants from unlawfully infringing Coin-Tainer's intellectual property rights through Defendants' manufacture, distribution and/or sale of counterfeit merchandise bearing Coin-Tainer's registered mark.

## PARTIES

1.     Plaintiff The Coin-Tainer Company, LLC is a Minnesota limited liability company (**"Coin-Tainer"**) with its principal place of business at 13001 Twilight Road, Onamia, Minnesota.

2.     Defendant Pap-R Products Company is a Delaware corporation (**"Pap-R Products"**) with its principal place of business located at 1 Harry Glynn Drive, Martinsville, Clark County, Illinois.

3.     Defendant Pap-R-Tainer, LLC is an Illinois limited liability company (**"Pap-R-Tainer"**) with its registered office located at 1 Harry Glynn Drive, Martinsville, Clark County, Illinois.

## JURISDICTION

4.     This Court has subject matter jurisdiction over Plaintiff's claims under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Plaintiff's related state law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

5.     This Court has personal jurisdiction over Defendants because Defendants have marketed their services within the State of Illinois, the effects of Defendants' conduct are felt in the State of Illinois, and Defendants' conduct was purposefully directed within the State of Illinois.

6.     Pursuant to 28 U.S.C. § 1391, venue is proper in the District because a substantial part of the events giving rise to Plaintiff's claims occurred in the District and the contract at issue contains an exclusive venue provision within this District.

## FACTUAL ALLEGATIONS

7.     Coin-Tainer realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

8.     Coin-Tainer began doing business in 1976 as a paper, coin and currency handling product manufacturer.

9.     Coin-Tainer is the owner of a number of U.S. federal trademarks, including "Coin-Tainer®," U.S. Trademark Registration Number 2,227,311, which was registered on March 2, 1999.  In addition to Coin-Tainer®, Coin-Tainer has common law rights to the Coin-Tainer name, logo, and related marks in connection with its services provided in the paper, coin and currency handling field (collectively, the "Coin-Tainer Marks").

10.    Coin-Tainer has invested substantial resources in developing its recognizable brand throughout the United States and worldwide.

11.    Coin-Tainer has filed affidavits pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, to make Coin-Tainer® incontestable.

12.     As a result of Coin-Tainer's continuous and exclusive use of the Coin-Tainer Marks in connection with its services, the Coin-Tainer Marks enjoys wide public acceptance and association with Coin-Tainer, and have come to be recognized widely and favorably by the public as an indicator of the origin of Coin-Tainer's services.

13.     As a result of Coin-Tainer's extensive use and promotion of the Coin-Tainer Marks, Coin-Tainer has built up and now owns extremely valuable goodwill that is symbolized by the Coin-Tainer Marks.  The public has come to associate the Coin-Tainer Marks with Coin-Tainer.

14.     Consumers encountering Defendants' services and use of infringing marks are likely to be confused into believing that Defendants' services either originate from Coin-Tainer or that such services are sponsored by or otherwise affiliated with Coin-Tainer.

15.     Upon information and belief, Defendants are using infringing marks for an improper purpose.

16.     Defendants' improper use has resulted, and will continue to result, in direct harm to Coin-Tainer.

17.     Upon information and belief, Defendants intentionally adopted and used a confusingly similar imitation of the Coin-Tainer Marks knowing that the infringing marks would mislead and deceive consumers into believing that Defendants' services were affiliated, authorized, sponsored, or endorsed by Coin-Tainer, or that the services originated with Coin-Tainer.

4

18.     Defendants' infringing marks are not associated, affiliated, or connected with Coin-Tainer, or licensed, authorized, sponsored, endorsed, or approved by Coin-Tainer in any way.

19.     The likelihood of confusion, mistake, and deception engendered by Defendants' infringement of the Coin-Tainer Marks is causing and will continue to cause irreparable harm to the goodwill symbolized by the Coin-Tainer Marks and the reputation for quality that they and Coin-Tainer embody.

20.     Defendants' activities are likely to cause confusion due to Defendants' use of a confusingly similar imitation of the Coin-Tainer Marks.  By causing a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm on the goodwill symbolized by the Coin-Tainer Marks and the reputation for quality that they and Coin-Tainer embody.

21.     On January 14, 2014, Coin-Tainer sustained a fire to its operations that resulted in a 100% loss of all assets.

22.     Coin-Tainer rebuilt its core manufacturing competencies in Elk River Minnesota.

23.     Coin-Tainer rebuilt all it could using insurance funds and bank financing.

24.     Coin-Tainer increased its capabilities to manufacture in its core competencies knowing it was planning to merge with another company who could manufacture all of the other items it previously offered.

25.     That merger took place on February 23, 2015 when Coin-Tainer and Pap-R Products came together and created a joint venture called Pap-R-Tainer.

5

26.     Each company, Coin-Tainer and Pap-R Products, owned 50% of the membership interests in Pap-R-Tainer.

27.     Unfortunately, that merger was short lived. The parties became deadlocked in the affairs of the company and litigation ensued in Illinois state court wherein each side sought dissolution of Pap-R-Tainer.

28.     On or about April 4, 2017 a receiver was appointed to protect the creditors and be responsible for the operations of Pap-R-Tainer.

29.     On or about May 31, 2017, the court appointed OSP, LLC d/b/a ATEC ("**ATEC**") of Chesterfield, Missouri to serve as the receiver for Pap-R-Tainer.

30.     As of the date of this complaint, ATEC was still the court ordered receiver for Pap-R-Tainer.

31.     During the course of the dissolution litigation, on October 31, 2017 a quasi-mediation occurred at the offices of Carmody MacDonald P.C., legal counsel for ATEC.

32.     That quasi-mediation resulted in a written, signed settlement term sheet wherein Defendants were to purchase the Coin-Tainer entity for three million three hundred fifty thousand dollars ($3,350,000.00), and thereby become the sole 100% owner of the joint venture, Pap-R-Tainer.

33.     Defendants reneged on the term sheet, and when a motion to enforce was brought, the Illinois State Court determined that the term sheet was not binding and refused to enforce its terms.

34.     The dissolution lawsuit continued and was ultimately settled through a written settlement agreement ("**Agreement**") attached hereto as **Exhibit A**.

35.     The Agreement differed from the October 31, 2017 settlement in that Defendants no longer wanted to purchase the Coin-Tainer entity but instead only wanted to purchase Coin-Tainer's membership interest in Pap-R-Tainer.

36.     Every individual and entity involved in the dissolution lawsuit signed off on the Agreement including, the receiver (ATEC), the bank (First Neighbor Bank) who held security interests in the assets of Pap-R-Tainer, the respective companies (Coin-Tainer and Pap-R Products), and the principals of those companies (Dave Walters of Coin-Tainer and Scott Ware of Pap-R Products).

37.     A number of terms changed from the October 31, 2017 transaction including a reduction in the purchase price to only two hundred thousand dollars ($200,000.00).

38.     However, where Plaintiff (and its principal, Dave Walters) originally would have been bound by a non-compete restriction, with the new Agreement, they were not, and the parties anticipated that Plaintiff (and Walters) would go back into competition with Defendants. As such, Plaintiff retained its corporate identity, federal tax ID number, goodwill, tradenames and trademarks, vendor relations, vendor status, decision making and authority.

39.     The Agreement granted Defendants a limited, exclusive right to use Coin-Tainer's tradenames, trademarks and likeness until December 31, 2018.

40.     Specifically, Coin-Tainer (referred to as CT in the Agreement) granted Pap-R Products and Pap-R-Tainer (referred to as PRP and PRT respectively in the Agreement) the following license:

The Coin-Tainer License.  CT shall grant PRP and/or PRT a temporary, exclusive, royalty-free license to use the name "Coin-Tainer" and "The Coin-Tainer Company" through December 31, 2018. During this time, PRP and/or PRT shall not take any adverse action which would negatively affect the "Coin-Tainer" and "The Coin-Tainer Company" trade names. To prevent confusion, CT shall not use the names "Coin-Tainer" or "The Coin-Tainer Company" in the United States marketplace through December 31, 2018. On January 1, 2019, PRP and PRT shall return anything using the names "Coin-Tainer" and "The Coin-Tainer Company" and CT shall have sole rights to all variations of the CT trade names.

The Parties understand that vendors have already printed product catalogs for 2019 and that those catalogs describe certain PRT/PRP products as "Coin-Tainer" products, which is out of the control of PRP/PRT at this time and which shall not be deemed a violation of this Paragraph 5. PRP/PRT will submit updated information to vendors for use in their 2020 catalogs that does not include the names "Coin-Tainer" or "The Coin-Tainer Company." The Parties further understand that some PRP/PRT products identified as "Coin-Tainer" products will remain in vendors inventory and on vendors' shelves past December 31, 2018 and that this shall not be a violation of this Paragraph 5. PRT/PRP will not ship any products containing the name "Coin-Tainer" or "The Coin-Tainer Company" after December 31, 2018.

41.    Since January 1, 2019, Coin-Tainer has uncovered evidence that Defendants have not only continued using Coin-Tainer's tradename and likeness, it has engaged in blatant trademark infringement and counterfeiting.

42.    Attached hereto as **Exhibit B** are photos taken recently depicting a sample of Defendants trademark infringement and counterfeiting.

43.    In addition to the trademark infringement and counterfeiting, Defendants have continued to represent that they can act on behalf of and have authority to direct changes to Coin-Tainer's business.

8

44.     Defendants have continued to do business under Coin-Tainer's vendor status and agreements which are tied directly to Coin-Tainer's Federal Tax ID, DUNS number, Global Location Number (GLN) and GS1 barcodes.

45.     Defendants are continuing to do business as and represent themselves as Coin-Tainer by accepting purchase orders in the name of Coin-Tainer, invoicing under Coin-Tainer's vendor status and number, and accepting payment under the same.

46.     Defendants are adversely affecting Coin-Tainer's brand, tradename, trademarks and goodwill by continually incurring fines and chargebacks for incorrect, defective and unfulfilled orders. Defendants are also failing to satisfy those fines and chargebacks which negatively affect Coin-Tainer.

47.     Even more troubling, Defendants have engaged in deceptive and fraudulent actions of shorting product in the pre-packaged bags which bare the Coin-Tainer brand and trademark further negatively affecting Coin-Tainer's brand, tradename, trademarks and goodwill.

48.     Defendants actions have caused actual confusion with the customers. When inquiry is made, the customers routinely believed they were still doing business with Coin-Tainer because of the Coin-Tainer tradename, trademark, vendor status and agreement. Defendants failed, or refused, to inform the customers of the distinction.

49.     All of the acts herein are material breaches of the Agreement and must be enjoined to avoid irreparable harm.

50.     Pursuant to Fed.R.Civ.P. 38, Coin-Tainer demands a jury trial on all counts.

## COUNT I.
## TRADEMARK COUNTERFEITING 15 U.S.C. § 1114

51.     Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

52.     Defendants, without authorization from Coin-Tainer, have used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from the Coin-Tainer Marks.

53.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' infringing products are genuine or authorized products of Coin-Tainer.

54.     Defendants have acted with knowledge of Coin-Tainer's ownership of the Coin-Tainer Marks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the Coin-Tainer Marks.

55.     Defendants' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

56.     Upon information and belief, Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

57.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

58.     Defendants' actions constitute knowing, deliberate, and willful infringement of the Coin-Tainer Marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117.

59.     Defendants caused and are likely to continue causing substantial injury to Coin-Tainer. As such, Coin-Tainer is entitled to injunctive relief and to recovery of lost profits, actual damages, enhanced profits and damages, statutory damages, costs, and reasonable attorney's fees. Said damages exceed $75,000.00.

60.     The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

## COUNT II.
## TRADEMARK INFRINGEMENT 15 U.S.C. § 1114

61.     Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

62.     Coin-Tainer has used the Coin-Tainer Marks and name in commerce in connection with its services.

63.     Defendants had both actual and constructive knowledge of Coin-Tainer's ownership and rights in the Coin-Tainer Marks prior to Defendants' infringing use of a mark that is confusingly similar to the Coin-Tainer Marks.

64.     Defendants adopted and continue to use a mark that is confusingly similar to the Coin-Tainer Marks, with full knowledge of Coin-Tainer's superior rights, and with full knowledge that their infringing use was intended to cause confusion, mistake and/or deception.

65.    Defendants offer their services under the infringing marks in the same channels of trade as those in which Coin-Tainer's services are offered.

66.    Defendants' past and future use of a mark confusingly similar to the Coin-Tainer Marks in connection with currency and coin wrapping services is likely to cause confusion, deception, and mistake by creating the false or misleading impression that Defendants' services are provided or offered by Coin-Tainer or are endorsed, sponsored or offered with the approval of Coin-Tainer.

67.    Defendants' mark is confusingly similar to the Coin-Tainer Marks and constitute trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

68.    Defendants' activities are causing, and will continue to cause, confusion and deception amongst members of the public and trade as to the source, nature, or provider of the goods and services offered by Defendants. Moreover, Defendants' use has and will continue to harm the reputation and goodwill of the Coin-Tainer Marks and business unless the court enjoins the infringing actions.

69.    Defendants' actions constitute knowing, deliberate, and willful infringement of the Coin-Tainer Marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117.

70.    Defendants caused and are likely to continue causing substantial injury to Coin-Tainer. As such, Coin-Tainer is entitled to injunctive relief and to recovery of lost profits, actual damages, enhanced profits and damages, statutory damages, costs, and reasonable attorney's fees. Said damages exceed $75,000.00.

71.    The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

## COUNT III.
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

72.    Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

73.    Defendants' use of the same or a confusingly similar mark to the Coin-Tainer Marks will continue to cause confusion and deception, by creating the false and misleading impression that Defendants' services are provided or offered by Coin-Tainer, or are affiliated, sponsored, or endorsed by Coin-Tainer.

74.    Defendants have deliberately and willfully attempted to trade on Coin-Tainer's long-standing and hard-earned goodwill in its name, the Coin-Tainer Marks, and the reputation established by Coin-Tainer in connection with its services, in order to confuse consumers as to the origin and sponsorship of Defendants' services.

75.    Defendants' unauthorized and tortious conduct has deprived and will continue to deprive Coin-Tainer of the ability to control the consumer perception of its services offered under its name and the Coin-Tainer Marks, placing valuable reputation and goodwill of Coin-Tainer in the hands of Defendants.

76.    Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants and their services with Coin-Tainer, and as to the origin, sponsorship, or approval of Defendants and their services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

77.     Defendants had knowledge of Coin-Tainer's prior use of and rights in the Coin-Tainer Marks before the acts complained of herein, or became aware of and disregarded such prior use and rights thereafter. The knowing, intentional, and willful nature of the acts set forth herein renders this an exception case under 15 U.S.C. § 1117.

78.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Coin-Tainer Marks to the great and irreparable injury of Coin-Tainer.

79.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Coin-Tainer. Coin-Tainer is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, statutory damages, costs, and reasonable attorneys' fees. Said damages exceed $75,000.00.

## COUNT IV.
## BREACH OF CONTRACT

80.     Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

81.     Coin-Tainer and Defendants, by their mutual assent, entered into a contractual agreement (the Agreement) supported by good and valuable consideration, whereby Defendants purchased Coin-Tainer's membership interests in Pap-R-Tainer.

82.     Defendants did not contract to purchase the Coin-Tainer entity and agreed to return anything baring the Coin-Tainer name.

83.     Defendants further agreed to cease using the Coin-Tainer tradenames, trademarks and doing business as Coin-Tainer by December 31, 2018.

14

84.    Coin-Tainer in turn, agreed to sell all its membership interests in Pap-R-Tainer and agreed to refrain from competing or entering the marketplace under its own name until January 1, 2019.

85.    Defendants have breached the Agreement by failing to perform its obligations under the Agreement and continuing to use Coin-Tainer's brand, tradename, trademarks, goodwill, vendor status and agreements and continuing to represent and do business as Coin-Tainer.

86.    Coin-Tainer for its part has performed all of its obligations under the Agreement.

87.    As a result of the aforesaid conduct, Coin-Tainer has suffered damages in an amount exceeding $75,000.00 to be proven at trial and is entitled to recovery of attorney's fees and costs under the Agreement.

*WHEREFORE*, Coin-Tainer respectfully requests the Court enter an order for judgment, in its favor, for the following relief:

1.    Order Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be permanently enjoined from:

      a. Advertising, marketing, promoting, offering for sale, or providing services under the infringing mark or holding themselves out as Coin-Tainer;

      b. Using the infringing mark on or in connection with any of Defendants' services;

    c.  Using the Coin-Tainer Marks or any copy, reproduction, colorable imitation, or simulation of the Coin-Tainer Marks in connection with Defendants' services;

    d.  Using any trademark, name, logo, design, or source designation of any kind in connection with Defendants' services that is a copy, reproduction, colorable imitation, or simulation of, or are sponsored or authorized by Coin-Tainer, or are in any way connected or related to Coin-Tainer;

    e.  Passing off, palming off, or assisting in passing off or palming off Defendants' services as those of Coin-Tainer, or otherwise continuing any and all acts of unfair competition; and

    f.  Advertising, promoting, offering for sale, or providing services under the infringing mark or otherwise infringing on Coin-Tainer's intellectual property rights in connection with providing similar services.

2.    Ordering Defendants to cease offering for sale, marketing, promoting, and providing services under the infringing mark or any other confusingly similar imitation of Coin-Tainer Marks.

3.    Order Defendants to return any and all material, inventory, advertisements, promotional material, or goods bearing the Coin-Tainer name.

4.    Order Defendants to account for any and all profits derived by Defendants derived from the Coin-Tainer Marks after December 31, 2018.

5.    Award Coin-Tainer statutory damages.

6.      Award Coin-Tainer all damages caused by the acts forming the basis of the Complaint.

7.      Award Coin-Tainer treble damages and enhanced disgorgement of Defendants' profits.

8.      Order Defendants to pay Coin-Tainer the costs and reasonable attorney's fees incurred by Coin-Tainer in this action.

9.      Award Coin-Tainer punitive damages for Defendants' willful and deliberate infringement of the Coin-Tainer Marks, and to deter such conduct in the future.

10.     Such further relief as the Court deems just and reasonable.


Dated: February 28, 2019.                    **TREPANIER MACGILLIS BATTINA P.A.**

                                             By: */s/ Bryan R. Battina*_____
                                             Bryan R. Battina (*admitted pro hac vice*)
                                             MN License #338102
                                             8000 Flour Exchange Building
                                             310 Fourth Avenue South
                                             Minneapolis, MN 55415
                                             Phone: 612.455.0500
                                             Email: bbattina@trepanierlaw.com

In Association With:

By: */s/ Sandra J. Tatoian*_____
MATHIS, MARIFIAN & RICHTER, LTD.
SANDRA J. TATOIAN, #06278580
101 W. Vandalia St., Ste. 100
P.O. Box 247
Edwardsville, IL 62025
Phone: 618-656-2244
Fax: 618-656-1307

                                             **ATTORNEYS FOR PLAINTIFF THE COIN-TAINER COMPANY, LLC**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into as of October 26, 2018, between (i) **Pap-R-Products Company** ("PRP"); (ii) **Scott Ware**; (iii) **The Coin-Tainer Company, LLC** ("CT"); (iv) **David Walters**; (v) **Coin-Tainer of Canada, Ltd.** ("CTC"); (vi) **Pap-R-Tainer, LLC** ("PRT"); and (vii) **First Neighbor Bank, N.A.** ("FNB"). The foregoing parties may be referred to collectively as the "Parties."

WHEREAS, on or about February 23, 2015, PRP and CT organized PRT as an Illinois limited liability company. PRP and CT each hold 50% of the membership interests in PRT pursuant to the "Operating Agreement of Pap-R-Tainer LLC," effective February 23, 2015 ("Operating Agreement");

WHEREAS, a dispute arose between PRP and CT concerning the operation of PRT resulting in a deadlock between PRP and CT as to the operation of PRT;

WHEREAS, on or about March 13, 2017, PRP commenced litigation against CT, PRT, and FNB entitled *Pap-R-Products Co. v. The Coin-Tainer Company, LLC et al.*, pending in the Circuit Court for the Fifth Judicial Circuit of Illinois, Clark County, Case No. 2017-CH-13 (referred to hereinafter as the "Action");

WHEREAS, in the Action, PRP asserted various claims against CT, including but not limited to breaches of fiduciary duty, and CT asserted various counterclaims against PRP, including but not limited to breaches of fiduciary duty, and crossclaims against FNB, including but not limited to civil conspiracy, with each party denying wrongdoing or liability to the other; and

WHEREAS, the Court in the Action appointed a receiver to operate PRT, and the current receiver of PRT is ATEC;

WHEREAS, the Parties have mutually agreed to settle and resolve certain disputes among them, some of which relate to the Action;

NOW, THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

1.  <u>Membership Interest Purchase.</u> In exchange for $200,000.00 (US dollars) ("Purchase Price"), PRP shall purchase one hundred percent (100%) of CT's interest in PRT ("the CT Interest," which interest comprises fifty percent (50%) of the ownership of PRT).

1



2.   Timing of Payment.  PRP shall make the payment of the Purchase Price no later than October 26, 2018, or one (1) business day after CT provides PRP with an executed copy of Exhibit A (pursuant to Paragraph 9 below), whichever occurs later.  PRP shall make the payment care of "Trepanier MacGillis Battina" via wire transfer.  Counsel shall provide wiring instructions prior to October 1, 2018.

3.   Ownership of PRT.  Once the payment of the Purchase Price has been made, PRP will become the sole owner of PRT and the Parties shall consider the Operating Agreement to have been dissolved.

4.   The CT Interest.  In purchasing the CT Interest, PRP is purchasing all of the CT assets and liabilities of PRT.

5.   The Coin-Tainer License.  CT shall grant PRP and/or PRT a temporary, exclusive, royalty-free license to use the name "Coin-Tainer" and "The Coin-Tainer Company" through December 31, 2018.  During this time, PRP and/or PRT shall not take any adverse action which would negatively affect the "Coin-Tainer" and "The Coin-Tainer Company" trade names.  To prevent confusion, CT shall not use the names "Coin-Tainer" or "The Coin-Tainer Company" in the United States marketplace through December 31, 2018.  On January 1, 2019, PRP and PRT shall return anything using the names "Coin-Tainer" and "The Coin-Tainer Company" and CT shall have sole rights to all variations of the CT trade names.

The Parties understand that vendors have already printed product catalogs for 2019 and that those catalogs describe certain PRT/PRP products as "Coin-Tainer" products, which is out of the control of PRP/PRT at this time and which shall not be deemed a violation of this Paragraph 5.  PRP/PRT will submit updated information to vendors for use in their 2020 catalogs that does not include the names "Coin-Tainer" or "The Coin-Tainer Company."  The Parties further understand that some PRP/PRT products identified as "Coin-Tainer" products will remain in vendors' inventory and on vendors' shelves past December 31, 2018 and that this shall not be deemed a violation of this Paragraph 5.  PRT/PRP will not ship any products containing the name "Coin-Tainer" or "The Coin-Tainer Company" after December 31, 2018.

6.   Dismissal of CT.  Within 10 business days after payment of the Purchase Price, PRP and CT shall stipulate that their claims against each other in the Action shall be dismissed with prejudice, each Party to bear its own costs, and CT's claims against FNB shall be dismissed with prejudice, each Party to bear its own costs. No Party to this Agreement shall object to these dismissals and, if requested by PRP and/or CT, shall stipulate to such dismissals.

2

7.  Dismissal of Action.  PRP, PRT, and FNB, as the parties that will be left remaining in the Action, without claims but with an interest in the receivership, anticipate petitioning the Court for a full dismissal with prejudice and discharging of the Receiver within the period of time reasonable or necessary for the windup of the Receiver's work, the timing of which is to be decided by those three parties and the Court.  PRT has been paying the fees of the Receiver and the Receiver's attorney and will continue to do so.

8.  Discharge of CTC Debt.  The Parties agree that any debt owed by CTC to PRP, CT or PRT for products purchased by CTC through today's date shall be considered fully discharged at the time of the payment of the Purchase Price.

9.  Debt to Lee Products.  CT and/or David Walters will remain fully liable for their debt to Lee Products that predated the existence of PRT, and none of that debt will be the responsibility of PRP, PRT, or any other Party.  CT and David Walters agree to indemnify PRP and hold PRP harmless against any claim by Lee Products for payment of principal or interest on this debt.  Within five (5) business days from full execution of this Agreement, CT's counsel shall provide to PRP's counsel the document attached hereto as Exhibit A signed by an authorized director or officer of Lee Products; any failure to do so will invalidate this Agreement and relieve PRP of its duty to pay the Purchase Price.

10. Debt to ERBP Master Tenant, LLC.  Once PRP becomes the sole owner of PRT as provided herein, PRT shall be fully responsible for any liability or settlement of the debt allegedly owing to CT's former landlord in Minnesota, ERBP Master Tenant, LLC ("ERBP") and CT shall not be so liable.

11. Other CT Debt.  PRT and PRP shall remain fully liable for any and all trade and/or vendor debt formerly in the name of CT that has been previously disclosed and placed on the books of PRT, including any debt, fines, chargebacks or liabilities under the CT name while PRP and/or PRT uses the "Coin-Tainer" and "The Coin-Tainer Company" tradenames.  PRP and PRT agree to indemnify CT and David Walters and hold them harmless for any claims, actions, or lawsuits seeking to recover on any such debt.  Neither PRT nor PRP shall be liable for any debt not previously disclosed and placed on the books of PRT, and CT shall indemnify PRT and PRP and hold them harmless for any claims, actions, or lawsuits seeking to recover on any such debt.

12. Release by CT, CTC, and David Walters.  CT, CTC, David Walters, and their past, present and future agents, representatives, shareholders, principals, attorneys, parent, subsidiary, or affiliate companies, officers, predecessors, successors, heirs, executors and assigns, release PRP, PRT, Scott Ware, and FNB and any of their past, present and future agents, representatives, shareholders, principals, attorneys,

3

parent, subsidiary, or affiliate companies, officers, directors, employees, predecessors, successors, heirs, executors, and assigns, from any and all claims, counterclaims, demands, causes of action, controversies, damages, suits, liabilities, defenses, or remedies that they have or may have, of any nature whatsoever, whether known or unknown, any time through the date of execution of this Agreement. This release includes but is not limited to any and all claims, counterclaims or setoffs that could have been asserted in the Action. This release does not apply to any action or proceeding to enforce the terms of this Agreement. CT, CTC, and David Walters acknowledge that they are aware that they might hereafter discover facts in addition to or different from those they currently know or believe to be true, in which event the release given by this Paragraph 12 is nonetheless binding.

13. <u>Release by PRP, PRT and Scott Ware.</u>  PRP, PRT, Scott Ware and their past, present and future agents, representatives, shareholders, principals, attorneys, parent, subsidiary, or affiliate companies, officers, predecessors, successors, heirs, executors and assigns, release CT, CTC, and David Walters and any of their past, present and future agents, representatives, shareholders, principals, attorneys, parent, subsidiary, or affiliate companies, officers, directors, employees, predecessors, successors, heirs, executors, and assigns, from any and all claims, counterclaims, demands, causes of action, controversies, damages, suits, liabilities, defenses, or remedies that they have or may have, of any nature whatsoever, whether known or unknown, any time through the date of execution of this Agreement. This release includes but is not limited to any and all claims, counterclaims or setoffs that could have been asserted in the Action. This release does not apply to any action or proceeding to enforce the terms of this Agreement, nor to any equipment or machinery allegedly misappropriated by CT or David Walters at or around the time of the consolidation of PRT's operations in Martinsville, Illinois, in January 2018, as provided further in Paragraph 15 below. PRP, PRT, and Scott Ware acknowledge that they are aware that they might hereafter discover facts in addition to or different from those they currently know or believe to be true, in which event the release given by this Paragraph 13 is nonetheless binding.

14. <u>FNB's Extinguishment of CT's Debt and of Personal Guarantees.</u>  FNB shall remove CT, Dave Walters and Dave Walters' spouse as recourse on any and all loans, liabilities, mortgages or security agreements to which they are guarantors on behalf of PRP, PRT, CT, individually or any other Scott Ware-related entity, CT, Dave Walters and his spouse shall owe no obligation or security to FNB as of the time of payment of the Purchase Price, except to the extent any equipment or machinery belonging to PRT was misappropriated by CT or David Walters at or around the time of the consolidation of PRT's operations in Martinsville, Illinois,

4

in January 2018, as provided further in Paragraph 15 below.

15. **PRT Equipment and Machinery.** CT and David Walters represent and warrant that all machinery and equipment that was the property of PRT was provided to PRT during the consolidation in January 2018. No machinery or equipment of PRT is in the possession of CT, Dave Walters, or anyone under their direction or control. CT and David Walters further represent and warrant that they will not reenter the marketplace using machinery and equipment that was the property of PRT. Any breach of this warranty falls outside of the release provided in Paragraph 13 above.

Should CT or David Walters reenter the marketplace and compete with PRT/PRP, upon reasonable notice, PRT/PRP shall be entitled to a verification from CT and/or David Walters showing the machinery and equipment in use and evidence of acquisition after October 26, 2018. In the event that machinery and equipment was built for CT or David Walters, they shall provide verification of such construction and evidence of acquisition of the major parts or components (*e.g.*, motors) of such machinery and equipment.

Should CT or David Walters reenter the marketplace and compete with PRT/PRP, PRT/PRP shall be entitled to, upon one hour notice, have up to two representatives (neither of whom may be an owner or employee of PRT or PRP) visit the manufacturing facility and view all machinery and equipment and to take pictures. Such visit may only occur twice within the next three years and shall last no more than one hour. The one-hour notice provided under this Paragraph shall be given to David Walters both by emailing him at dave.walters@coin-tainer.com and calling him at 612-599-4476. If David Walters does not answer the phone, a voice mail message shall suffice.

If CT and Dave Walters elect not to go into competition or if no evidence shows CT or Dave Walters are using or leasing PRT machinery, PRT/PRP and FNB shall be barred from bringing a claim based on allegedly misappropriated machinery.

16. **Studio503 Lawsuit and/or Arbitration.** The Parties understand that PRP is currently the plaintiff in a separate lawsuit captioned *Pap-R-Products Company v. Pap-R-Tainer, LLC et al.*, pending in the Circuit Court for the Fifth Judicial Circuit of Illinois, Clark County, Case No. 2017-CH-13 (referred to hereinafter as the "503 Action"), in which Studio503 LLC and Michael Walters are defendants.

Once PRP becomes the sole owner of PRT as provided herein, all claims and liabilities from the relationship between Studio503 LLC and Michael Walters on the one hand and PRP, CT, and/or PRT on the other hand shall henceforth be solely the ownership and responsibility of PRP and/or PRT.

5

CT, CTC, and David Walters shall fully cooperate with PRP and PRT in connection with the 503 Action and any arbitration proceeding involving Studio503 and/or Michael Walters on the one hand and PRP and/or PRT on the other. Such cooperation shall include making documents and witnesses reasonably available for production, inspection, and/or testimony without the need for a subpoena, to the extent CT, CTC, or David Walters can. If CT, CTC, and David Walters so elect, requests for such cooperation shall be made through their counsel.

PRT, PRP, and/or Scott Ware agree to indemnify FNB and hold FNB harmless against any claim by Studio503 and/or Michael Walters arising from any conduct occurring before October 26, 2018 with respect to PRT, PRP, or CT.

17. Compromise. This Agreement concerns settlement of disputed claims and the consideration given is not to be construed as an admission of liability and is not an admission of liability.

18. Company Financials. CT and David Walters acknowledge that, because they are not restricted from going into competition against PRP and PRT, they waive their right to any further financial information from PRP and/or PRT unless PRP fails to pay the Purchase Price by the date required in Paragraph 2 above.

19. Year-End 2018 Income Tax Preparation. PRT agrees to direct PRT's accountant to act diligently in the preparation of federal and state income tax returns for PRT for all activity ending December 31, 2018, and to provide CT with information necessary for CT to file CT's 2018 tax returns on or before March 1, 2019.

20. Further Assurances. The Parties agree to execute such other documents, and to take such other action, as may be reasonably necessary to further the purposes of this Agreement.

21. Governing Law and Exclusive Venue. This Agreement shall be governed by, construed and enforced in accordance with, the laws of Illinois, without regard to its choice of law or conflicts of law provisions. All disputes arising under or related to this Agreement shall be brought solely in the state courts situated in the County of Clark, State of Illinois, or the United States District Court for the Southern District of Illinois.

22. Integrated Agreement. This is an integrated agreement. All agreements, covenants, representations and warranties, express or implied, oral or written, concerning the subject matter of this Agreement are contained here. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made concerning the subject matter. All prior and

6

contemporaneous conversations, negotiations, representations, covenants and warranties concerning the subject matter are merged here.

23.   <u>Modification</u>.  This Agreement may not be modified except by a writing jointly signed by all Parties.

24.   <u>Attorneys' Fees and Costs</u>.  Each Party shall bear its own attorneys' fees and costs incurred through the execution of this Agreement.  Each Party also represents that it has consulted, or had the opportunity to consult, with legal counsel regarding the terms of this Agreement.  If any Party hereto commences any action arising out of this Agreement, including, without limitation, any action to enforce or interpret this Agreement or an action related to any equipment or machinery misappropriated by CT or David Walters at or around the time of the consolidation of PRT's operations in Martinsville, Illinois, in January 2018, as provided further in Paragraph 15 above, the prevailing party or parties in such action shall be entitled to recover its reasonable attorney's fees and other expenses incurred in such action.

25.   <u>Legal Representation</u>.  Once PRP becomes the sole owner of PRT as provided herein, PRP's current counsel may represent PRT without any claim on the part of CT or David Walters that counsel's representation of PRT presents any actual, potential, or perceived conflict of interest.

26.   <u>Voluntary Agreement</u>.  The Parties represent that they have read this Agreement and know the contents, and that they sign the same freely and voluntarily.

27.   <u>No Assignment or Encumbrance</u>.  The Parties represent and warrant that they have not assigned or encumbered the claims released in this Agreement, that such claims are free and clear of any liens or encumbrances, and that they are free to release such claims.

28.   <u>Benefit and Burden</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties and their respective successors, predecessors, assigns, agents, representatives, heirs, executors, administrators, and personal representatives.

29.   <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be considered an original, all of which together shall be considered one and the same instrument.  This Agreement may be executed by facsimile and such signatures shall be binding and deemed original for the purposes of enforcing this Agreement.

30.   Signatures and Binding Authority.  The Parties signify agreement to this
Agreement by their signatures below.  Each signatory for any legal entity
represents and warrants that he or she has full power and authority to bind legally
such entity to this Agreement.

31.   No Tax Advice.  No Party has provided tax advice to any other Party in
connection with this Agreement or the obligations contained within it.  Each Party
agrees to rely on its or his own tax advisors/accountants for such tax advice.


IN WITNESS WHEREOF, the Parties have executed this agreement on the dates
opposite their respective signatures.


**PAP-R-PRODUCTS COMPANY:**

By _____          Date: October ___, 2018
Scott Ware, its President and CEO

**SCOTT WARE**

_____             Date: October ___, 2018
Scott Ware


**THE COIN-TAINER COMPANY, LLC**

By _____          Date: October 26, 2018
David Walters, its President and CEO

**COIN-TAINER OF CANADA, LTD.**

By _____          Date: October 26, 2018
David Walters, its President and CEO

**DAVID WALTERS**

_____             Date: October 26, 2018
David Walters


8

30.   <u>Signatures and Binding Authority</u>.  The Parties signify agreement to this Agreement by their signatures below.  Each signatory for any legal entity represents and warrants that he or she has full power and authority to bind legally such entity to this Agreement.

31.   <u>No Tax Advice</u>.  No Party has provided tax advice to any other Party in connection with this Agreement or the obligations contained within it.  Each Party agrees to rely on its or his own tax advisors/accountants for such tax advice.


        IN WITNESS WHEREOF, the Parties have executed this agreement on the dates opposite their respective signatures.


**PAP-R-PRODUCTS COMPANY:**

By _____                     Date: October 26, 2018
Scott Ware, its President and CEO

**SCOTT WARE**

_____                          Date: October 26, 2018
Scott Ware


**THE COIN-TAINER COMPANY, LLC**

By_____                       Date: October ___, 2018
David Walters, its President and CEO

**COIN-TAINER OF CANADA, LTD.**

By_____                       Date: October ___, 2018
David Walters, its President and CEO

**DAVID WALTERS**

_____                          Date: October ___, 2018
David Walters


8

PAP-R-TAINER, LLC

By _____ as Receiver          Date: October 26 2018
Dave Lewis, ATEC, Receiver


FIRST NEIGHBOR BANK, N.A.

By _____          Date: October 26 2018
Carol Jo Fritts, Its President and CEO

9

From:LEE PRODUCTS                    952 555 5555        10/26/2018 12:04      #160 P.001/001

LEE PRODUCTS:

                                                        October
                                          Date: September 26, 2018

By: _____

Its: PRESIDENT & CEO


PAP-R-TAINER, LLC:

                                                        October
                                          Date: September 29, 2018

By: _____

Its: AS RECEIVER



## Walgreens

#11421 1180 ARCADE ST
SAINT PAUL, MN 55105
651-251-9887

8196   0021   02/17/2019 8:26 A

COIN WRAPPERS 36S          ASMT
09377517036        A        1.99
RETURN VALUE 1.99
SPRING WATER 1L              1.49
04902251743
RETURN VALUE 1.49

SUBTOTAL                     3.48
SALES TAX A=7.875%           0.16

TOTAL                        3.64
CASH                         4.00
CHANGE                       0.36

THANK YOU FOR SHOPPING AT WALGREENS

YOU COULD HAVE SAVED BY USING YOUR
BALANCE REWARDS CARD TODAY! RESTRICTION
APPLY. FOR TERMS AND CONDITIONS, VISIT
WALGREENS.COM/BALANCE.

DID YOU KNOW THAT YOU CAN EARN POINTS
ON THOUSANDS OF ITEMS IN-STORE AND
ONLINE? SEE OUR WEEKLY AD FOR MORE
INFORMATION. ITEMS CHANGE WEEKLY.
RESTRICTIONS APPLY. FOR TERMS AND
CONDITIONS, VISIT WALGREENS.COM/BALANCE

RFN# 1142-1218-1969-1902-1703



**rewards**

How are we doing?
Enter our monthly sweepstakes for
$3,000 cash

WWW.WA
***
OU



EXHIBIT
B

within 7
survey about this Walgreens



The **Coin-Tainer**® Co. LLC

# double ticket roll

## 2000 tickets

**2000** consecutively numbered tickets

perforated for easy dispensing

made from recycled material

100% biodegradable

made in the USA





The **Coin-Tainer**® Co. LLC
P.O. Box 55 • 214 8th St. NE
Milaca, MN 56353
www.coin-tainer.com

0  93775 60205  0

