UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

_____

The Coin-Tainer Company, LLC        Case No. 3:19-CV-00234 (NJR/RJD)

      Plaintiff,                **THIRD AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

v.

Pap-R Products Company,
Pap-R-Tainer, LLC, and
Scott Ware, individually,

      Defendants.

_____

***COMES NOW,*** Plaintiff The Coin-Tainer Company, LLC, for its third amended complaint against Pap-R Products Company, Pap-R-Tainer, LLC and Scott Ware (collectively **"Defendants"**), states and alleges as follows:

## NATURE OF THE CASE

1.     This is an action for trademark infringement, counterfeiting and dilution under the Lanham Act, 15 U.S.C. § 1051, et seq., including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and for trademark infringement, dilution and unfair competition occasioned by Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of Coin-Tainer's registered and unregistered trademarks and service marks, as well as breach of the parties' settlement agreement. Coin-Tainer brings this action to (i) protect its reputation for selling merchandise of the highest quality and grade; (ii) prevent deception of the consuming public by Defendants; (iii) retain control over the substantial goodwill associated with its

1

registered and unregistered trademarks and service marks being unlawfully exploited by Defendants; and (iv) avoid thousands of irretrievably lost sales.

2.      Specifically, Coin-Tainer seeks injunctive relief to prevent Defendants from unlawfully infringing Coin-Tainer's intellectual property rights through Defendants' manufacture, distribution and/or sale of counterfeit merchandise bearing Coin-Tainer's registered mark.

## PARTIES

3.      Plaintiff The Coin-Tainer Company, LLC is a Minnesota limited liability company (**"Coin-Tainer"**) with its principal place of business at 13001 Twilight Road, Onamia, Minnesota.

4.      Defendant Pap-R Products Company is a Delaware corporation (**"Pap-R Products"**) with its principal place of business located at 1 Harry Glynn Drive, Martinsville, Clark County, Illinois. Pap-R Products is 50% membership interest holder in Pap-R-Tainer.

5.      Defendant Pap-R-Tainer, LLC is an Illinois limited liability company (**"Pap-R-Tainer"**) with its registered office located at 1 Harry Glynn Drive, Martinsville, Clark County, Illinois.

6.      Defendant Scott Ware (**"Ware"**) is an individual with a business address of 1 Harry Glynn Drive, Martinsville, Clark County, Illinois. Ware is the sole shareholder and President of Pap-R Products. Ware is a 50% membership interest holder and President of Pap-R-Tainer, Pap-R Products is the other 50% membership interest holder.

## JURISDICTION

7.      This Court has subject matter jurisdiction over Plaintiff's claims under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Plaintiff's related state law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

8.      This Court has personal jurisdiction over Defendants because Defendants have marketed their services within the State of Illinois, the effects of Defendants' conduct are felt in the State of Illinois, and Defendants' conduct was purposefully directed within the State of Illinois.

9.      Pursuant to 28 U.S.C. § 1391, venue is proper in the District because a substantial part of the events giving rise to Plaintiff's claims occurred in the District and the contract at issue contains an exclusive venue provision within this District.

## FACTUAL ALLEGATIONS

10.     Coin-Tainer realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

11.     Coin-Tainer began doing business in 1976 as a paper, coin and currency handling product manufacturer.

### Coin-Tainer Trademarks

12.     Coin-Tainer is the owner of a U.S. federal trademark "Coin-Tainer®," U.S. Trademark Registration Number 2,227,311, which was registered on March 2, 1999.  In addition to Coin-Tainer®, Coin-Tainer has common law rights to the Coin-Tainer name,

3

logo, trade dress and related marks in connection with its services provided in the paper, coin and currency handling field (collectively, the "Coin-Tainer Marks").

13.     Coin-Tainer has invested substantial resources in developing its recognizable brand throughout the United States and worldwide.

14.     Coin-Tainer has filed affidavits pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, to make Coin-Tainer® incontestable.

15.     As a result of Coin-Tainer's continuous and exclusive use of the Coin-Tainer Marks in connection with its services, the Coin-Tainer Marks enjoys wide public acceptance and association with Coin-Tainer, and have come to be recognized widely and favorably by the public as an indicator of the origin of Coin-Tainer's services.

16.     As a result of Coin-Tainer's extensive use and promotion of the Coin-Tainer Marks, Coin-Tainer has built up and now owns extremely valuable goodwill that is symbolized by the Coin-Tainer Marks.  The public has come to associate the Coin-Tainer Marks with Coin-Tainer.

17.     Consumers encountering Defendants' services and use of infringing marks are likely to be confused into believing that Defendants' services either originate from Coin-Tainer or that such services are sponsored by or otherwise affiliated with Coin-Tainer.

18.     Upon information and belief, Defendants are using infringing marks for an improper purpose.

19.     Defendants' improper use has resulted, and will continue to result, in direct harm to Coin-Tainer.

20.     Upon information and belief, Defendants intentionally adopted and used a confusingly similar imitation of the Coin-Tainer Marks knowing that the infringing marks would mislead and deceive consumers into believing that Defendants' services were affiliated, authorized, sponsored, or endorsed by Coin-Tainer, or that the services originated with Coin-Tainer.

21.     Defendants' infringing marks are not associated, affiliated, or connected with Coin-Tainer, or licensed, authorized, sponsored, endorsed, or approved by Coin-Tainer in any way.

22.     The likelihood of confusion, mistake, and deception engendered by Defendants' infringement of the Coin-Tainer Marks is causing and will continue to cause irreparable harm to the goodwill symbolized by the Coin-Tainer Marks and the reputation for quality that they and Coin-Tainer embody.

23.     Defendants' activities are likely to cause confusion due to Defendants' use of a confusingly similar imitation of the Coin-Tainer Marks.  By causing a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm on the goodwill symbolized by the Coin-Tainer Marks and the reputation for quality that they and Coin-Tainer embody.

**<u>Joint Venture</u>**

24.     On January 14, 2014, Coin-Tainer sustained a fire to its operations that resulted in a 100% loss of all assets.

25.     Coin-Tainer rebuilt its core manufacturing competencies in Elk River Minnesota.

5

26.     Coin-Tainer rebuilt all it could using insurance funds and bank financing.

27.     Coin-Tainer increased its capabilities to manufacture in its core competencies knowing it was planning to join forces with another company who could manufacture all of the other items it previously offered.

28.     On February 23, 2015, Coin-Tainer and Pap-R Products came together and created a joint venture called Pap-R-Tainer.

29.     Each company, Coin-Tainer and Pap-R Products, owned 50% of the membership interests in Pap-R-Tainer.

30.     Unfortunately, that merger was short lived. The parties became deadlocked in the affairs of the company and litigation ensued in Illinois state court wherein each side sought dissolution of Pap-R-Tainer (**"Dissolution Litigation"**).

31.     In the Dissolution Litigation, Coin-Tainer asserted claims of breach of fiduciary duties, accounting, dissolution, aiding and abetting breach of fiduciary duties, civil conspiracy, tortious interference with contract and economic advantage, and fraud.

32.     On or about April 4, 2017 a receiver was appointed to protect the creditors and be responsible for the operations of Pap-R-Tainer.

33.     On petition by Coin-Tainer, or about May 31, 2017, the court appointed a second receiver, OSP, LLC d/b/a ATEC (**"ATEC"**) of Chesterfield, Missouri to serve as the receiver for Pap-R-Tainer.

34.     During the course of the Dissolution Litigation, on October 31, 2017 a quasi-mediation occurred at the offices of Carmody MacDonald P.C., legal counsel for ATEC.

35.    That quasi-mediation resulted in a written, signed settlement term sheet wherein Defendants were to purchase the Coin-Tainer entity for three million three hundred fifty thousand dollars ($3,350,000.00), and thereby become the sole 100% owner of the joint venture, Pap-R-Tainer.

36.    Defendants reneged on the term sheet, and when a motion to enforce was brought, the Illinois State Court determined that the term sheet was not binding and refused to enforce its terms.

37.    The Dissolution Litigation continued and was ultimately settled through a written settlement agreement (**"Agreement"**).

38.    The Agreement differed from the October 31, 2017 settlement in that Defendants no longer wanted to purchase the Coin-Tainer entity but instead only wanted to purchase Coin-Tainer's membership interest in Pap-R-Tainer.

39.    Every individual and entity involved in the dissolution lawsuit signed off on the Agreement including, the receiver (ATEC), the bank (First Neighbor Bank) who held security interests in the assets of Pap-R-Tainer, the respective companies (Coin-Tainer and Pap-R Products), and the principals of those companies (Dave Walters of Coin-Tainer and Scott Ware of Pap-R Products).

40.    A number of terms changed from the October 31, 2017 transaction including a reduction in the purchase price to only two hundred thousand dollars ($200,000.00).

41.    However, where Plaintiff (and its principal, Dave Walters) originally would have been bound by a non-compete restriction, with the new Agreement, they were not, and the parties anticipated that Plaintiff (and Walters) would go back into competition with

Defendants. As such, Plaintiff retained its corporate identity, federal tax ID number, goodwill, tradenames and trademarks, vendor relations, vendor status, decision making and authority.

**Defendants' Limited License**

42.    The Agreement granted Defendants a limited, exclusive right to use Coin-Tainer's tradenames, trademarks and likeness until December 31, 2018.

43.    Specifically, Coin-Tainer (referred to as CT in the Agreement) granted Pap-R Products and Pap-R-Tainer (referred to as PRP and PRT respectively in the Agreement) the following license:

> The Coin-Tainer License.  CT shall grant PRP and/or PRT a temporary, exclusive, royalty-free license to use the name "Coin-Tainer" and "The Coin-Tainer Company" through December 31, 2018. During this time, PRP and/or PRT shall not take any adverse action which would negatively affect the "Coin-Tainer" and "The Coin-Tainer Company" trade names. To prevent confusion, CT shall not use the names "Coin-Tainer" or "The Coin-Tainer Company" in the United States marketplace through December 31, 2018. On January 1, 2019, PRP and PRT shall return anything using the names "Coin-Tainer" and "The Coin-Tainer Company" and CT shall have sole rights to all variations of the CT trade names.

> The Parties understand that vendors have already printed product catalogs for 2019 and that those catalogs describe certain PRT/PRP products as "Coin-Tainer" products, which is out of the control of PRP/PRT at this time and which shall not be deemed a violation of this Paragraph 5. PRP/PRT will submit updated information to vendors for use in their 2020 catalogs that does not include the names "Coin-Tainer" or "The Coin-Tainer Company." The Parties further understand that some PRP/PRT products identified as "Coin-Tainer" products will remain in vendors inventory and on vendors' shelves past December 31, 2018 and that this shall not be a violation of this Paragraph 5. PRT/PRP will not ship any products containing the name "Coin-Tainer" or "The Coin-Tainer Company" after December 31, 2018.

44.     Since January 1, 2019, Coin-Tainer has uncovered evidence that Defendants have not only continued using Coin-Tainer's tradename and likeness, it has engaged in blatant trademark infringement and counterfeiting by, among other things, manufacturing, selling, supplying, and profiting from the Coin-Tainer Marks.

45.     Specifically, Defendants manufactured, sold and shipped product bearing the Coin-Tainer Marks to Regent in 2019, without Coin-Tainer's consent.

46.     Upon information and belief, Defendants manufactured, sold and shipped product bearing the Coin-Tainer Marks to other customers in 2019, without Coin-Tainer's consent.

47.     It was revealed through discovery that Defendants have knowingly and intentionally covered up the Coin-Tainer Marks on products and continued to sell and ship product mimicking the Coin-Tainer brand.

48.     It was further discovered that Defendants simply swapped out their logo for the Coin-Tainer logo on product packaging thereby committing unlawful trade dress violations.

49.     The stickering over the Coin-Tainer logo did not completely cover the logo and could be seen through the sticker.

50.     Additionally, the Coin-Tainer logo can be seen from the back side of the packaging bags.

51.     Ware was directly aware of the Agreement, Coin-Tainer's retention of the Coin-Tainer Marks, the limited license granted to Defendants and the infringing actions of Defendants. Ware personally and willfully participated in the manufacture, sale and

shipping of the infringing products after December 31, 2018. Ware, as the sole owner of Defendants, was a moving, active, conscious force behind Defendant's infringement.

52.   In addition to the trademark infringement and counterfeiting, Defendants have continued to represent that they can act on behalf of and have authority to direct changes to Coin-Tainer's business.

53.   Defendants have continued to do business under Coin-Tainer's vendor status and agreements which are tied directly to Coin-Tainer's Federal Tax ID, DUNS number, Global Location Number (GLN) and GS1 Company Prefix and barcodes.

54.   Defendants are continuing to do business as and represent themselves as Coin-Tainer by accepting purchase orders in the name of Coin-Tainer, invoicing under Coin-Tainer's vendor status and number, and accepting payment under the same including transacting checks in the name of Coin-Tainer. Defendants are adversely affecting Coin-Tainer's brand, tradename, trademarks and goodwill by continually incurring fines and chargebacks for incorrect, defective and unfulfilled orders. Defendants are also failing to satisfy those fines and chargebacks which negatively affect Coin-Tainer.

55.   Even more troubling, Defendants have engaged in deceptive and fraudulent actions of shorting product in the pre-packaged bags which contain the Coin-Tainer Marks further negatively affecting Coin-Tainer's brand, tradename, trademarks and goodwill.

56.   Defendants actions have caused actual confusion with the customers. When inquiry is made, the customers routinely believed they were still doing business with Coin-Tainer because of the Coin-Tainer Marks, tradename, trademark, vendor status and agreement. Defendants failed, or refused, to inform the customers of the distinction.

10

57.     All of the acts herein are material breaches of the Agreement and must be enjoined to avoid irreparable harm.

58.     Coin-Tainer's counsel sent a cease and desist letter to Defendants on or about February 21, 2019 demanding Defendants cease their unlawful actions. Defendants responded proclaiming their innocence yet continued to manufacture, sell and ship product after both December 31, 2018 and after receiving the cease and desist letter.

59.     Further and pursuant to the settlement agreement, Defendants were to return to Plaintiff any products bearing the Coin-Tainer Marks. Defendants knowingly and intentionally hid the fact that they were in possession of hundreds to thousands of poly bags (which are used in manufacturing the end product – the packaging of the coin wrappers) and not only failed to return them to Plaintiff, Defendants used the poly bags and either sold them with the Coin-Tainer Marks or attempted to cover up the Coin-Tainer Marks with stickers and continued to sell them well into 2019 and possibly continue to sell them.

60.     Through discovery, Plaintiff has uncovered defaming remarks made by Defendants against Plaintiff after execution of the settlement agreement, including, but not limited to:

     a.     "effective 1-1-2019, Cointainer will be legally doing business as Pap-R-Products";

     b.     That Pap-R Products was formerly Cointainer;

     c.     "Effective Jan. 1, 2019, The Coin-Tainer Company, LLC and Pap-R-Tainer LLC entities no longer exist";

d. "Just a reminder that effective January 1, Cointainer/Pap-R Tainer no longer exists, the new name is Pap-R Products…";

e. "Just a reminder that Paprtainer/Cointainer formally changed the first of the year to Pap-R Products Co.".

61.    These statements made to customers are admittedly false and were intentionally made by Defendants constituting defamation per se.

62.    Pursuant to Fed.R.Civ.P. 38, Coin-Tainer demands a jury trial on all counts.

**COUNT I.**
**TRADEMARK COUNTERFEITING 15 U.S.C. § 1114**
**(All Defendants)**

63.    Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

64.    Defendants, without authorization from Coin-Tainer, have manufactured, sold, supplied, shipped and/or used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from the Coin-Tainer Marks.

65.    The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' infringing products are genuine or authorized products of Coin-Tainer.

66.    Defendants have acted with knowledge of Coin-Tainer's ownership of the Coin-Tainer Marks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the Coin-Tainer Marks.

67.     Defendants' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

68.     Upon information and belief, Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

69.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

70.     Defendants' actions constitute knowing, deliberate, and willful infringement of the Coin-Tainer Marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117.

71.     Defendants caused and are likely to continue causing substantial injury to Coin-Tainer. As such, Coin-Tainer is entitled to injunctive relief and to recovery of lost profits, actual damages, enhanced profits and damages, statutory damages, costs, and reasonable attorney's fees. Said damages exceed $75,000.00.

72.     The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

## COUNT II.
## TRADEMARK INFRINGEMENT 15 U.S.C. § 1114
### (All Defendants)

73.     Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

74.     Coin-Tainer has used the Coin-Tainer Marks and name in commerce in connection with its services.

75.     Defendants had both actual and constructive knowledge of Coin-Tainer's ownership and rights in the Coin-Tainer Marks prior to Defendants' infringing use of a mark that is confusingly similar to the Coin-Tainer Marks.

76.     Defendants adopted and continue to use a mark that is confusingly similar to the Coin-Tainer Marks, with full knowledge of Coin-Tainer's superior rights, and with full knowledge that their infringing use was intended to cause confusion, mistake and/or deception.

77.     Defendants offer their services under the infringing marks in the same channels of trade as those in which Coin-Tainer's services are offered.

78.     Defendants' past and future use of a mark confusingly similar to the Coin-Tainer Marks in connection with currency and coin wrapping services is likely to cause confusion, deception, and mistake by creating the false or misleading impression that Defendants' services are provided or offered by Coin-Tainer or are endorsed, sponsored or offered with the approval of Coin-Tainer.

79.     Defendants' mark is confusingly similar to the Coin-Tainer Marks and constitute trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

80.     Defendants' activities are causing, and will continue to cause, confusion and deception amongst members of the public and trade as to the source, nature, or provider of the goods and services offered by Defendants. Moreover, Defendants' use has and will continue to harm the reputation and goodwill of the Coin-Tainer Marks and business unless the court enjoins the infringing actions.

14

81.     Defendants' actions constitute knowing, deliberate, and willful infringement of the Coin-Tainer Marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117.

82.     Defendants caused and are likely to continue causing substantial injury to Coin-Tainer. As such, Coin-Tainer is entitled to injunctive relief and to recovery of lost profits, actual damages, enhanced profits and damages, statutory damages, costs, and reasonable attorney's fees. Said damages exceed $75,000.00.

83.     The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

### COUNT III.
### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
#### (All Defendants)

84.     Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

85.     Defendants' use of the same or a confusingly similar mark to the Coin-Tainer Marks will continue to cause confusion and deception, by creating the false and misleading impression that Defendants' services are provided or offered by Coin-Tainer, or are affiliated, sponsored, or endorsed by Coin-Tainer.

86.     Defendants have deliberately and willfully attempted to trade on Coin-Tainer's long-standing and hard-earned goodwill in its name, the Coin-Tainer Marks, and the reputation established by Coin-Tainer in connection with its services, in order to confuse consumers as to the origin and sponsorship of Defendants' services.

87.    Defendants' unauthorized and tortious conduct has deprived and will continue to deprive Coin-Tainer of the ability to control the consumer perception of its services offered under its name and the Coin-Tainer Marks, placing valuable reputation and goodwill of Coin-Tainer in the hands of Defendants.

88.    Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants and their services with Coin-Tainer, and as to the origin, sponsorship, or approval of Defendants and their services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

89.    Defendants had knowledge of Coin-Tainer's prior use of and rights in the Coin-Tainer Marks before the acts complained of herein, or became aware of and disregarded such prior use and rights thereafter. The knowing, intentional, and willful nature of the acts set forth herein renders this an exception case under 15 U.S.C. § 1117.

90.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Coin-Tainer Marks to the great and irreparable injury of Coin-Tainer.

91.    Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Coin-Tainer. Coin-Tainer is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, statutory damages, costs, and reasonable attorneys' fees. Said damages exceed $75,000.00.

## COUNT IV.
## BREACH OF CONTRACT
### (Pap-R Products, Pap-R-Tainer)

92.     Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

93.     Coin-Tainer and Defendants, by their mutual assent, entered into a contractual agreement (the Agreement) supported by good and valuable consideration, whereby Defendants purchased Coin-Tainer's membership interests in Pap-R-Tainer.

94.     Defendants did not contract to purchase the Coin-Tainer entity and agreed to return anything baring the Coin-Tainer name.

95.     Defendants further agreed to cease using the Coin-Tainer tradenames, trademarks and doing business as Coin-Tainer by December 31, 2018.

96.     Coin-Tainer in turn, agreed to sell all its membership interests in Pap-R-Tainer and agreed to refrain from competing or entering the marketplace under its own name until January 1, 2019.

97.     Defendants have breached the Agreement by failing to perform its obligations under the Agreement and continuing to use Coin-Tainer's brand, tradename, trademarks, goodwill, vendor status and agreements and continuing to represent and do business as Coin-Tainer.

98.     Additionally, Defendants have sold and shipped product containing the Coin-Tainer Marks to Regent and other customers in 2019.

99.     Additionally, Defendants have breached the Agreement by not returning everything bearing the Coin-Tainer name.

17

100.    Coin-Tainer for its part has performed all of its obligations under the Agreement.

101.    As a result of the aforesaid conduct, Coin-Tainer has suffered damages in an amount exceeding $75,000.00 to be proven at trial and is entitled to recovery of attorney's fees and costs under the Agreement.

## COUNT V.
## DEFAMATION
### (Pap-R Products, Pap-R-Tainer)

102.    Coin-Tainer reasserts each and every allegation contained in prior paragraphs as if fully restated herein.

103.    Defendant Pap-R Products and Defendant Pap-R-Tainer employees and representatives made defamatory statements about Plaintiff as more fully described above, including but not limited to:

a.    "effective 1-1-2019, Cointainer will be legally doing business as Pap-R-Products";

b.    That Pap-R Products was formerly Cointainer;

c.    "Effective Jan. 1, 2019, The Coin-Tainer Company, LLC and Pap-R-Tainer LLC entities no longer exist";

d.    "Just a reminder that effective January 1, Cointainer/Pap-R Tainer no longer exists, the new name is Pap-R Products…";

e.    "Just a reminder that Paprtainer/Cointainer formally changed the first of the year to Pap-R Products Co.".

104.    Defendant Pap-R Products employees and representatives made an unprivileged publication of those statements to potential customers of Plaintiff.

105.    The statements constitute defamation per se and/or defamation per quod.

106.    The publication caused Plaintiff damages in harm to its reputation, lost business opportunities, sales and confusion in the marketplace.

107.    Plaintiff's lost business opportunities and lost sales exceed a million dollars annually.

108.    As a result of the aforesaid conduct, Coin-Tainer has suffered damages in an amount exceeding $75,000.00 to be proven at trial.

***WHEREFORE***, Coin-Tainer respectfully requests the Court enter an order for judgment, in its favor, for the following relief:

1.    Order Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be permanently enjoined from:

      a.  Advertising, marketing, promoting, offering for sale, or providing services under the infringing mark or holding themselves out as Coin-Tainer;

      b.  Using the infringing mark on or in connection with any of Defendants' services;

      c.  Using the Coin-Tainer Marks or any copy, reproduction, colorable imitation, or simulation of the Coin-Tainer Marks in connection with Defendants' services;

    d.   Using any trademark, name, logo, design, or source designation of any kind in connection with Defendants' services that is a copy, reproduction, colorable imitation, or simulation of, or are sponsored or authorized by Coin-Tainer, or are in any way connected or related to Coin-Tainer;

    e.   Passing off, palming off, or assisting in passing off or palming off Defendants' services as those of Coin-Tainer, or otherwise continuing any and all acts of unfair competition;

    f.   Advertising, promoting, offering for sale, or providing services under the infringing mark or otherwise infringing on Coin-Tainer's intellectual property rights in connection with providing similar services; and

    g.   from (1) using the Coin-Tainer Marks, name, logo, and trade dress; (2) using Coin-Tainer's GLN, GS1 Company Prefix and associated barcodes; and (3) doing business under Coin-Tainer's vendor status, vendor numbers and agreements.

2.    Ordering Defendants to cease offering for sale, marketing, promoting, and providing services under the infringing mark or any other confusingly similar imitation of Coin-Tainer Marks.

3.    Order Defendants to return any and all material, inventory, advertisements, promotional material, or goods bearing the Coin-Tainer name.

4.    Order Defendants to account for any and all profits derived by Defendants from the Coin-Tainer Marks after December 31, 2018.

5.    Award Coin-Tainer statutory damages.

6.    Award Coin-Tainer all damages caused by the acts forming the basis of the Complaint.

7.    Award Coin-Tainer treble damages and enhanced disgorgement of Defendants' profits.

8.    Order Defendants to pay Coin-Tainer the costs and reasonable attorney's fees incurred by Coin-Tainer in this action.

9.    Award Coin-Tainer punitive damages for Defendants' willful and deliberate infringement of the Coin-Tainer Marks, and to deter such conduct in the future.

10.    Holding Ware personally liable for the actions of Defendants.

11.    Such further relief as the Court deems just and reasonable.


Dated: March 17, 2020.                    **TREPANIER MACGILLIS BATTINA P.A.**

                                          By: */s/ Bryan R. Battina*_____
                                          Bryan R. Battina (*admitted pro hac vice*)
                                          MN License #338102
                                          8000 Flour Exchange Building
                                          310 Fourth Avenue South
                                          Minneapolis, MN 55415
                                          Phone: 612.455.0500
                                          Email: bbattina@trepanierlaw.com
In Association With:
                                          **BYRON CARLSON PETRI & KALB, LLC**

                                              */s/Brian R. Kalb*
                                          By: _____
                                           Brian R. Kalb, IL #6275228
                                                brk@bcpklaw.com
                                           411 St. Louis Street
                                               Edwardsville, IL 62025
                                           Phone: 618.655.0600
                                           Fax: 618.655.4004
                                          *www.bcpklaw.com*

21

**ATTORNEYS   FOR   PLAINTIFF   THE
COIN-TAINER COMPANY, LLC**