## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THE COIN-TAINER COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:19-cv-234-DWD |
| | ) | |
| PAP-R PRODUCTS COMPANY, | ) | |
| PAP-R-TAINER LLC, and | ) | |
| SCOTT WARE, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendants' motion *in limine*. (Doc. 198). Defendants ask the Court to bar Plaintiff The Coin-Tainer Company, LLC ("Coin-Tainer") from presenting evidence of damages at trial because it failed to adequately disclose its damages during discovery. Because damages are an essential element of Coin-Tainer's sole remaining claim, Defendants also ask the Court to dismiss Coin-Tainer's claim and issue judgment in Defendants' favor. The motion is fully briefed (Docs. 198, 202, 203 & 207), the Court heard oral arguments on the motion on December 9, 2021 (Doc. 204), and it is now ripe for decision. The Court finds that Coin-Tainer failed to adequately disclose computations of its two remaining categories of damages and that allowing Coin-Tainer to present evidence supporting those categories would prejudice Defendants. Therefore, Defendants' motion *in limine* is due to be granted and Coin-Tainer's claim against Defendants will be dismissed.

I.  FACTUAL BACKGROUND

Coin-Tainer and Defendant Pap-R Products Company ("Pap-R Products"), once market competitors in the business of the manufacture and sale of paper products for storing and handling of coin currency, entered into a joint venture that quickly evolved into an Illinois limited liability company: Defendant Pap-R-Tainer, LLC ("Pap-R-Tainer"). Unfortunately, conflict developed between the members and the joint venture began to devolve almost from its inception. Not long thereafter, litigation ensued. The litigation between the members ended, at least temporarily, with the settlement of that lawsuit. But even the settlement did not go as planned, and Coin-Tainer instituted this lawsuit and named Scott Ware, the sole owner of Pap-R Products, as an additional defendant. Defendants responded with counterclaims of their own.

Initially, Coin-Tainer's Third Amended Complaint (Doc. 103) (the "Complaint") included claims for trademark counterfeiting (Count I), trademark infringement (Count II), federal unfair competition and false designation of origin (Count III), breach of contract (Count IV), and defamation (Count V). Defendants filed motions for partial summary judgment on Counts I through V of Coin-Tainer's Third Amended Complaint. (Docs. 147–149). This Court granted Defendants' motions such that only Count IV presently survives.

Count IV of Coin-Tainer's Complaint alleges that the Settlement Agreement provided that Defendants Pap-R Products and Pap-R-Tainer agreed to return to Coin-Tainer "anything [bearing] the Coin-Tainer name" (Doc. 103 at 17) and "to cease using the Coin-Tainer tradenames, trademarks and doing business as Coin-Tainer by December 31, 2018." (Doc. 103 at 17). Coin-Tainer claims that Defendants breached the Settlement

Agreement by: (1) continuing to use Coin-Tainer's brand, tradename, trademarks, goodwill, vendor status and by continuing to do business as Coin-Tainer; (2) selling and shipping product containing the Coin-Tainer Marks; and (3) by not returning everything bearing the Coin-Tainer name. (Doc. 103 at 17).

The Settlement Agreement provides that Pap-R Products pay $200,000 to Coin-Tainer in exchange for one hundred percent of Coin-Tainer's interest in Pap-R-Tainer, thereby making Pap-R Products the sole owner of Pap-R-Tainer. (Doc. 153-1 at 2–3). Upon payment of the $200,000, Pap-R Products purchased all of the "CT assets and liabilities of PRT," and any debt owed by Coin-Tainer or its affiliates to Pap-R-Tainer was to "be considered fully discharged at the time of the payment of the Purchase Price." (Doc. 153-1 at 3–4). Section 5 of the Settlement Agreement also grants Pap-R-Tainer and Pap-R Products a "temporary, exclusive, royalty-free license" to use the names "Coin-Tainer" and "The Coin-Tainer Company" (the "CT Trade Names") from October 26, 2018 to December 31, 2018, and prohibits Coin-Tainer from using those names in the United States during that time. (Doc. 153-1 at 3). After December 31, 2018, Coin-Tainer would become entitled to the sole rights "to all variations of the CT trade names." (Doc. 153-1 at 3). At that time, Defendants were required to cease "ship[ping] products containing the name 'Coin-Tainer' or 'The Coin-Tainer Company'" and to return all such products to Coin-Tainer. (Doc. 153-1 at 3).

However, by the terms of the Settlement Agreement (as discussed in detail in this Court's Memorandum and Order of April 26, 2021 (Doc. 176)), Coin-Tainer received via the Settlement Agreement no intellectual property beyond the trade names "Coin-

Tainer" and "The Coin-Tainer Company." This Court then determined that summary judgment on all counts but Count IV was appropriate. With that determination went all of Coin-Tainer's claims for damages related to intellectual property except its claim for Defendants' use of the "Coin-Tainer" and "The Coin-Tainer Company" trade names. That claim includes the allegations that the Defendants used the "Coin-Tainer" and "The Coin-Tainer Company" tradenames through shipping of products and the failure to return the legacy bags as called for in the Settlement Agreement. (Doc. 103 at 17). In its Memorandum and Order addressing the motions for summary judgment, this Court stated, "However, whether this breach caused damages above and beyond the value of the packaging – that is damages for continued use of the tradename – presents questions of fact that cannot be resolved by the current record." (Doc. 176 at 21).

On September 9, 2021, the Court granted Defendants' renewed *Daubert* motion to exclude the testimony of Coin-Tainer's damages expert, Fernando Torres, because his testimony was not relevant to the remaining claims. (Doc. 194). Defendants responded to the Court's ruling by filing the present motion *in limine*, arguing that Coin-Tainer could no longer provide evidence of damages without its expert because it had not disclosed any other computation of damages during discovery. (Doc. 198).

## II.  LEGAL STANDARDS

On motions *in limine*, the movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground, "for any purpose." *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994). The court may deny a motion *in limine* when it "lacks the necessary specificity with respect to the evidence to be excluded." *Nat'l Union*

4

*Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

Moreover, the court may alter an *in limine* ruling based on developments at trial or sound

judicial discretion. *Luce v. United States*, 469 U.S. 38, 41, (1984). "Denial of a motion *in*

*limine* does not necessarily mean that all evidence contemplated by the motion will be

admitted at trial." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1401 (N.D.

Ill. 1993). Denial only means that the court cannot decide admissibility outside the context

of trial. *Plair*, 864 F. Supp. at 69. A court may reserve judgment until trial, so that the

motion *in limine* is placed "in an appropriate factual context." *Nat'l Union*, 937 F. Supp. at

287. Stated another way, motion *in limine* rulings are "subject to change when the case

unfolds" at trial. *Luce*, 469 U.S. at 41.

### III.  DISCUSSION

Federal Rules of Civil Procedure 26 and 37(c) provide the legal framework for the

Court's evaluation of Coin-Tainer's disclosures. Among its initial disclosures, a party

must include "a computation of each category of damages claimed by the disclosing

party—who must also make available . . . the documents or other evidentiary material . . .

on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). A party also has an

ongoing duty to supplement its initial disclosures "in a timely manner if the party learns

that in some material respect the disclosure or response is incomplete or incorrect, and if

the additional or corrective information has not otherwise been made known to the other

parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). A failure

to disclose merits the sanction of exclusion unless the failure was substantially justified

or harmless. Fed. R. Civ. P. 37(c)(1); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d

735, 742 (7th Cir. 1998).

In response to Defendants' motion *in limine*, Coin-Tainer asserted that is has two categories of damages remaining after the Court excluded the testimony of its expert witness. First, Coin-Tainer asserts that it can recover for lost profits resulting from Defendants' use of its trade name. Second, Coin-Tainer asserts that it can recover the value of the bags that Defendants failed to return as required by the Settlement Agreement. Defendants argue that Coin-Tainer never amended its disclosures to include either of these categories of damages or computations for these categories.

Coin-Tainer concedes that it did not timely amend its disclosures as required by Rule 26(a)(1)(A)(iii).[1] Instead, it asserts that it is excepted from that requirement because the information came out during discovery and therefore had "otherwise been made known" to Defendants. Fed. R. Civ. P. 26(e)(1)(A). Coin-Tainer points to various discovery materials discussing the number of bags retained by Defendants and to invoices showing the price that Pap-R-Tainer paid for those bags. Coin-Tainer also argues that two spreadsheets disclosed during discovery provide a projection of profits Coin-Tainer would have made during 2019 and 2020 but for Defendants' conduct.

## A.    Bags

Despite discovery materials showing the number of bags and the cost of certain bags, Coin-Tainer failed to disclose an actual computation of damages related to the bags. During the hearing on the present motion, counsel for Coin-Tainer argued that the

---

[1] For the first time, Coin-Tainer offered amended initial disclosures when it responded to Defendants' motion *in limine* (Doc. 202-2) but made clear that it does not rely on this late amendment to satisfy its obligations under Rule 26(e). (Doc. 202 at 4).

computation of the value of the bags was a matter of simple arithmetic. Discovery documents disclose the total number of bags wrongfully held by Defendants: 436,250. (Doc. 207 at 60 & 69). And some of the invoices disclosed by Coin-Tainer show that Pap-R-Tainer paid $0.058 per bag for the same types of bags. (Doc. 207 at 38–39). Counsel for Coin-Tainer is correct that these numbers can be used to produce a simple, arithmetical calculation of damages: 436,250 bags x $0.058 = $25,302.50. And it is true that a party need not disclose a specific computation when computation is straightforward. *See Robinson v. Champaign Unit 4 School District*, 412 F. App'x 873, 878 (7th Cir. 2011) (holding that plaintiff did not need to provide computation of damages for back pay because it is a "straightforward category of damages that the [defendant] may easily compute").

Yet, the information disclosed in discovery still falls short of the requirements of Rules 26(e) and 37(c). Under Rule 26(e), the question is not whether Coin-Tainer knew the computation of damages but whether that computation was *made known* to Defendants. While the number of bags may have been adequately disclosed during discovery, the invoices do not clearly indicate the value of the bags at issue. Coin-Tainer produced 15 pages of invoices. And while the first two pages indicate that $0.058 was the price per bag for some bags, there are other invoices with different prices for similar bags.[2] Any presentation of these invoices at trial would require Coin-Tainer to connect specific entries in the invoices to the bags retained by Defendants. However, Coin-Tainer has not disclosed any evidence that makes that connection. Without additional evidence,

---

[2] For example, the first page of invoices indicates that the price per bag for a product with a description including the terms "CN" and "NICKE" is $0.058, but the third page includes an entry with the exact same description but a price per bag of $0.06005. (Doc. 207 at 38 & 40).

these invoices do not provide the basis for a straightforward computation in a way that satisfies Rule 26(e). *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("[B]y its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents.").

Further, Rule 37(c) requires that Coin-Tainer not be permitted to present evidence of damages relating to the bags at trial. As discussed above, Coin-Tainer failed to make a disclosure of damages relating to the bags as required by Rule 26. And its failure to do so was not "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). Coin-Tainer's own arguments show why its failure to adequately disclose this category of damages was not substantially justified. The computation could have been very simple math. Coin-Tainer could have disclosed the specific invoices at issue or timely provided notice that a witness would explain which prices on the invoices correspond to the bags retained by Defendants. Yet, Coin-Tainer has not pointed to any evidence that makes that connection. Permitting Coin-Tainer to present the invoices as evidence of the bags' value would also be prejudicial to Defendants. In arguing this motion *in limine*, Defendants indicated that they dispute Coin-Tainer's newly disclosed computation of damages relating to the bags. (Doc. 203 at 4). But because this is the first time Defendants have been informed of this computation, they have not had an opportunity to develop evidence to rebut Coin-Tainer's evidence of damages. With the trial date looming, Coin-Tainer's late amendment to its disclosures is prejudicial. Therefore, the Court will not permit Coin-Tainer to present evidence of damages relating to the bags wrongfully retained by Defendants.

B.    **Lost Profits**

The documents disclosed in support of Coin-Tainer's lost profits damages also do not satisfy Rule 26(e). First, they do not constitute an actual computation of damages. As explained by David Walters, Coin-Tainer's principal, the spreadsheets were models of Coin-Tainer's projected profits in 2019 and 2020 should it reenter the market. (Doc. 202-1 at 3–4). The purpose of the models was to help Walters secure funding for Coin-Tainer. (Doc. 202-1 at 4). Thus, on their own terms, the spreadsheets do not provide a specific computation of Coin-Tainer's lost profits due to Defendants' conduct. And lost profits are not straightforward calculations that can excuse a failure to provide a specific computation. *See Robinson*, 412 F. App'x at 878 (citing *Design Strategy, Inc.*, 469 F.3d at 295).

Even when viewed as documents supporting a computation of damages, the spreadsheets are inadequate. The spreadsheets fail to show causation, a requirement for Coin-Tainer's damages claim. *See TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 633 (7th Cir. 2007) ("Moreover, the party requesting damages must show causation, that is that the alleged breach is the cause of those damages, with reasonable certainty."). The spreadsheets were sent to Walters in January 2019. Thus, they could not have accounted for the Court's April 26, 2021, summary judgment decision that Coin-Tainer is entitled to the use of its trade name but has no rights to its trademark, trade dress, GS1, GLN company prefix, or barcodes. (Doc. 176 at 16). In fact, the Court observed that separating out damages caused by trade name infringement (as opposed to trademark) would require additional data, analysis, and opinions, none of which has

Coin-Tainer provided. (Doc. 194 at 9). As such, the spreadsheets are inadequate to support a computation of lost profits caused by Defendants' use of Coin-Tainer's tradename, even if such a computation had been made and disclosed.

In its initial disclosures, which went without amendment during almost the entire course of this case, Coin-Tainer indicated that its damages would be based primarily on Defendants' sales. (Doc. 198-1 at 4). And in response to Defendants' interrogatories, Coin-Tainer indicated that its damages for trademark infringement would be based on Defendants' sales and its damages for breach of contract would be based on its inability to reenter the market as described in its expert disclosures. (Doc. 198-2 at 6–7). In turn, Coin-Tainer's expert analyzed Coin-Tainer's damages based only on Defendants' sales and profits. (Doc. 146-2 at 15). Nowhere in his report did Coin-Tainer's expert analyze the spreadsheets modelling Coin-Tainer's projected profits or the value of the bags retained by Defendants. It appears that Coin-Tainer's focus on these two categories of damages arose only after the Court excluded its expert's testimony and Defendants filed their motion *in limine*. While it is perfectly conceivable that Coin-Tainer could have produced and disclosed an adequate computation of damages for both of these categories during the normal course of discovery, Coin-Tainer's last ditch attempt to revive these categories of damages comes too late. *See Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-CV-268 JD, 2017 WL 3016385, at *3 (N.D. Ind. July 17, 2017) (rejecting plaintiff's attempt to provide an alternative computation of damages 18 months after the close of discovery and only after the court excluded its expert's testimony on damages).

10

For these reasons, the Court finds that Coin-Tainer has failed to adequately disclose damages relating to its sole remaining claim of breach of contract. As such, Coin-Tainer will not be permitted to present evidence of damages at trial, pursuant to Rule 37(c). The Court has considered whether a lesser sanction under Rule 37 would suffice but finds that anything less would work prejudice against Defendants. Without evidence of damages, Coin-Tainer cannot succeed on its sole remaining claim of breach of contract. *See Kemper/Prime Indus. Partners v. Montgomery Watson Ams., Inc.*, No. 97 C 4278, 2004 WL 725223, at *5 (N.D. Ill. Mar. 31, 2004) ("Because Plaintiff cannot offer any evidence of damages at trial, its claim must be dismissed with prejudice."); *In re Ill. Bell Telephone Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013) ("Damages are an essential element of a breach of contract action and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law."). Therefore, judgement is due to be entered against Coin-Tainer.

## IV. CONCLUSION

For these reasons, Defendants' motion *in limine* (Doc. 198) is **GRANTED**, and Plaintiff's sole remaining claim (Count IV) is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment in Defendants' favor and close the case. The setting for Status Conference set for December 22, 2021 is hereby VACATED.

**SO ORDERED.**
Dated: December 20, 2021

_____
DAVID W. DUGAN
United States District Judge